# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>    v.<br><br>ERNEST ARMANDO ANDUJO,<br>    Defendant. | CR 18-00835-DSF<br><br>Order DENYING Motion to Suppress Evidence (Dkt. 30) |

Defendant Ernest Armando Andujo moves to suppress evidence seized during the search of his home on November 2, 2018, or in the alternative, requests a Franks hearing. For the reasons stated below, the Motion is DENIED.

## I. Statement of Facts[1]

Sergeant David Clements has been a full-time police officer with the Los Angeles Port Police (LAPP) since 2002. Dkt. 31-1, Clements Decl. ¶ 3, Ex. A (Clements Search Warrant and Affidavit) at 6. In October 2018, he investigated allegations of theft and damage to a vessel owned by alleged victim R.G. (the Vessel). Id. at 7. Sergeant Clements interviewed R.G. about the allegations and R.G. informed him that he had hired Ernest

---

[1] These facts are included in the affidavit supporting the search warrant. See generally Clements Decl. ¶ 3, Ex. A.

Andujo to perform repairs on his Vessel.  Id. at 8.  R.G. also stated that he gave Mr. Andujo a key to access the Vessel when he was out of town from October 16 to October 22.  Id.  When R.G. returned from his trip, he noticed repair parts were missing and the repairs were not finished.  Id.  He went to Mr. Andujo's home to find out what happened.  Mr. Andujo stated that he had the parts inside his house and would finish the repairs.  Id.  On October 26, R.G. picked Mr. Andujo up from his home and brought him to the Vessel to finish the repairs.  Id. at 9.  The two had a dispute about their contractual arrangement regarding the repairs.  Id.  After spending less than thirty minutes back on the Vessel, R.G. discovered Mr. Andujo had left.  Id.  He also discovered that parts, personal tools, and $500 in cash were missing.  Id.  Later, R.G. noticed damage to his engine room.  Id.

R.G. informed Sergeant Clements that he believed Mr. Andujo was responsible for the theft and damage to his Vessel.  See id. at 8-10.  As part of the investigation, Sergeant Clements walked through the Vessel, reviewed surveillance footage, had a background search conducted on Mr. Andujo, and had two civilian witnesses interviewed.  Id. at 8-10; 13.  He also asked R.G. to identify Mr. Andujo in a photographic lineup, which R.G. did.  Id. at 10.  After touring the Vessel, Sergeant Clements concluded that due to the size of the Vessel, a theft could go unnoticed despite R.G.'s presence during the theft.  Id. at 11.  He could not determine whether the Vessel had been intentionally damaged.  Id.  Sergeant Clements reviewed the surveillance footage, which did not have recordings from October 16 through October 26.  Id. at 10.  The footage showed Mr. Andujo boarding the Vessel on October 16, the date the system stopped recording.  Id.

According to R.G., the only other person with access to the Vessel during the relevant time period was his longtime housekeeper, Manuel Sanchez.  Id. at 8.  Mr. Sanchez stated that

he saw Mr. Andujo on the Vessel while R.G. was out of town but did not report seeing any theft. Id. at 13. The other witness interviewed was Reweis Saad, an acquaintance R.G. had enlisted to review the surveillance video. Id. When interviewed, Mr. Saad stated he owned an audio video company and had twenty years of experience. Id. He also stated that he believed there was intentional tampering with the surveillance camera that affected its ability to record. Id. He did not have any information about the theft. Id.

A background search revealed Mr. Andujo had one prior conviction for grand theft involving parts entrusted to him by an employer. Id. at 7. It also provided Mr. Andujo's home address, which matched the address R.G. had provided. Id. at 13.

On October 31, Sergeant Clements sought a search warrant for Mr. Andujo's home. Clements Decl. ¶ 3. On November 2, Sergeant Clements executed the search warrant. Id. ¶ 4. As a result of the search of Mr. Andujo's home, police discovered what the government contends are two unlawful firearm suppressors and other items. Opp'n at 7. Mr. Andujo seeks to suppress the items discovered in his home, including the alleged firearm suppressors.

## II. Discussion

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. There is no dispute that Mr. Andujo's home was searched pursuant to a search warrant. Mr. Andujo argues that the search of his home was unlawful because the search warrant was not supported by probable cause. In the alternative, he seeks a Franks hearing to

3

challenge alleged omissions and misrepresentations in the supporting affidavit.

## A. Probable Cause

The Court reviews "the issuance of a search warrant deferentially, upholding it if the issuing judge 'had a substantial basis' for concluding [that] probable cause existed based on the totality of circumstances." Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir. 2009) (alteration in original) (quoting Greenstreet v. County of San Bernardino, 41 F.3d 1306, 1309 (9th Cir. 1994)). "The probable cause standard for a search warrant is whether, based on common sense considerations, there was 'a fair probability that contraband or evidence of a crime [would] be found in a particular place.'" United States v. Ruiz, 758 F.3d 1144, 1148 (9th Cir. 2014) (alteration in original) (quoting United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992)). "The magistrate judge need not determine 'that the evidence is more likely than not to be found where the search takes place'. . . . The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." Id. (quoting United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991)).

Mr. Andujo asserts that the search warrant lacked probable cause because it relied on uncorroborated self-serving claims by R.G. who was in a contractual dispute with Mr. Andujo. "[O]fficers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." Peng v. Mei Chin Penghu, 335 F.3d 970, 978 (9th Cir. 2003) (internal citation and quotation marks omitted).

Here, Sergeant Clements independently investigated the basis of R.G.'s knowledge and interviewed two other witnesses. Sergeant Clements investigated the Vessel, and noted that due to

its size, items could be stolen from it without R.G. noticing. Clements Decl. ¶ 3, Ex. A at 11. That Sergeant Clements could not immediately confirm whether the Vessel had been vandalized does not mean R.G.'s allegation of vandalism was not true. In addition, two civilian witnesses confirmed statements made by R.G., such as his statements that the video surveillance had been tampered with and that Mr. Andujo was present on the Vessel during the time in question. Id. at 13  Citizen witnesses are generally presumed reliable. See Ewing, 588 F.3d at 1224. Sergeant Clements reviewed the surveillance footage himself; the equipment was not recording during the relevant time period. Clements Decl. ¶ 3, Ex. A at 10. Sergeant Clements had also conducted a records check on Mr. Andujo, which revealed the same address for Mr. Andujo that R.G. had provided. Id. at 13-14. A background check revealed that Mr. Andujo had a prior conviction for theft from an employer. Id. at 7. These facts, among others, were detailed in the affidavit.

The only alleged failure of Sergeant Clements' investigation is his failure to investigate R.G.'s history of filing civil lawsuits. It is undisputed that Sergeant Clements was unaware of the lawsuits. Clements Decl. ¶ 4. Defense counsel does not provide any authority that such background research is necessary – or even appropriate – when investigating civilian victim allegations. The Court has found none. There are no allegations that Sergeant Clements was aware of any facts that put him on notice of R.G.'s various civil suits or that suggested he should investigate whether such suits existed.

The search warrant was supported by probable cause.

**B.   Franks Hearing**

Mr. Andujo contends he is entitled to a hearing under Franks v. Delaware, 438 U.S. 154 (1978), because the affidavit omitted that

5

Mr. Andujo's prior conviction of grand theft was a 22 year-old misdemeanor offense and because the affidavit did not include R.G.'s civil lawsuits.

In order to demonstrate the need for a <u>Franks</u> hearing, the defendant must make a "substantial preliminary showing" that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. <u>United States v. Napier</u>, 436 F.3d 1133, 1136 (9th Cir. 2006) (quoting <u>Franks</u>, 438 U.S. at 155-56); <u>DeLeon</u>, 979 F.2d at 764. "If a party makes a substantial showing of deception, the court must determine the materiality of the allegedly false statements or omissions." <u>Ewing</u>, 588 F.3d at 1224. "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." <u>Id.</u>

Even assuming the omissions were deliberate or reckless, a <u>Franks</u> hearing is not warranted because the alleged omissions would not have defeated probable cause had they been included. Concerning Mr. Andujo's prior conviction, the date and level of offense does not change the fact that Mr. Andujo was convicted of theft involving parts entrusted to him by an employer or impact the other information in the affidavit supporting probable cause. <u>See</u> <u>United States v. Nielsen</u>, 371 F.3d 574, 580 (9th Cir. 2004) (three paragraphs concerning criminal history in nine-page affidavit was not necessary to a finding of probable cause). The Court also finds that separate and unrelated civil lawsuits not involving Mr. Andujo do not undermine R.G.'s statements made to law enforcement or the ultimate finding of probable cause. The affidavit made clear that Mr. Andujo and R.G. had a business dispute and there is no indication that Sergeant Clements attempted to hide that fact. Based on the supplemented record, the magistrate could have reasonably concluded that a crime had

occurred and that the particular items to be seized could have been found in the particular places to be searched.

The Motion is DENIED.

IT IS SO ORDERED.

Date: September 4, 2019

_____
Dale S. Fischer
United States District Judge